Filed 4/20/22  P. v. Gessel CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TAMMY GESSEL,<br><br>Defendant and Appellant. | F081536<br><br>(Kern Super. Ct. No. SC071189A)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Susan L. Jordan, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Hill, P. J., Meehan, J. and De Santos, J.

## INTRODUCTION

Appellant Tammy Gessel pleaded guilty to second degree murder for fatally stabbing her boyfriend, and to three counts of attempted murder for stabbing and seriously wounding her father and two young children. She was sentenced to 15 years to life.

On appeal, her appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) We affirm.

## FACTS[1]

On June 4, 1997, appellant stabbed her boyfriend, Billy Enos; her two children; her father, Patrick Gessel; and herself. Mr. Enos died from his wounds.

Mr. Gessel stated he was asleep in the front yard when he awoke from sounds of furniture, or something being moved about the house. When he went inside to investigate, he encountered appellant. She put her arms around him as if to give him a hug, and then stabbed him in the back. Mr. Gessel wrestled appellant to the ground, taking the knife from her. He told appellant that she was "stabbing your daddy[]" and appellant said, "Daddy, it's time to die[.]" (*People v. Gessel, supra*, F031053, at pp. 2–3.)

---

[1] The prosecution's opposition to appellant's Penal Code section 1170.95 petition stated that it was filing this court's opinion from appellant's first appeal as a supporting exhibit, but the opinion was not included in the instant appellate record.

After notice to the parties, we take judicial notice of the appellate record and this court's nonpublished opinion in *People v. Gessel* (Jan. 21, 2000, F031053). (Evid. Code, § 450, § 452, subd. (d), § 459; *In re W.R.* (2018) 22 Cal.App.5th 284, 286–287, fn. 2.)

Our factual summary is taken from this court's nonpublished opinion that affirmed appellant's convictions on direct appeal. We recite these facts to provide context for the court's ruling and the parties' arguments. As will be explained below, we do not rely on this factual summary in resolving the issues presented in this appeal. (See § 1170.95, subd. (d)(3).)

Appellant was taken to the hospital for treatment of her wounds, and she told a deputy that she had stabbed her kids because she loved them. (*People v. Gessel, supra*, F031053, at p. 12.)

## PROCEDURAL BACKGROUND

On August 13, 1997, a felony complaint was filed in the Superior Court of Kern County charging appellant with committing the following offenses on June 4, 1997: count 1, murder of Billy Enos (Pen. Code, § 187, subd. (a));[2] and counts 2, 3, and 4, attempted murder of, respectively, Mr. Gessel, H.R., and E.R. (§§ 664, 187, subd. (a)). As to all counts, it was further alleged that appellant personally used a deadly or dangerous weapon, a knife, in the commission or attempted commission of the offense (§ 12022, subd. (b)(1)).

On August 11, 1997, the court held appellant to answer.

On August 15, 1997, the information was filed that alleged count 1, premeditated murder; and counts 2, 3, and 4, attempted murder; with the personal use enhancement alleged as to all counts; and an enhancement for personal infliction of great bodily injury alleged as to counts 2, 3, and 4 (§ 12022.7).

Appellant pleaded not guilty and not guilty by reason of insanity. (*People v. Gessel*, *supra*, F031053, at p. 2.)

**Plea and Sanity Hearings**

On March 2, 1998, appellant withdrew her previous plea of not guilty and pleaded guilty to count 1, second degree murder; counts 2 through 4, attempted murder; and she admitted the personal use and great bodily injury enhancements, pursuant to a negotiated disposition that the sentences for counts 2, 3, and 4 would run concurrent to each other but consecutive to count 1, for an aggregate term of 15 years to life plus 13 years. The

---

[2] All further statutory references are to the Penal Code unless otherwise stated.

parties stipulated to a factual basis for the pleas based on the preliminary hearing transcript and the police reports.

The court set the matter for a bench trial to determine appellant's sanity.

Thereafter, the court held a bench trial on sanity. The court found that appellant was unable to understand the nature and quality of her actions and was unable to distinguish right from wrong when she committed the offense. However, the court went on to find that appellant's insanity was not "settled" within the meaning of *People v. Kelly* (1973) 10 Cal.3d 565. Therefore, the court found appellant was legally sane at the time she committed the offense. (*People v. Gessel*, *supra*, F031053, at p. 2.)

**Sentencing Hearing**

On April 29, 1998, the court sentenced appellant as follows: 15 years to life on count 1, second degree murder, and stayed the personal use enhancement; plus a consecutive upper term of nine years for count 2, with one year for the personal use enhancement and three years for the great bodily injury enhancement; and concurrent terms for counts 3 and 4 and the attached enhancements, for an aggregate term of 15 years to life plus 13 years.

**Appellant's Direct Appeal**

Appellant filed an appeal and claimed the trial court's finding that she was sane at the time she committed the offense was not supported by substantial evidence. In addition, she argued the trial court erred in staying, instead of striking, the personal use enhancement. (*People v. Gessel*, *supra*, F031053, at p. 2.)

On January 21, 2000, this court filed the nonpublished opinion in appellant's appeal and found the trial court's finding of sanity in this case was supported by substantial evidence. (*People v. Gessel*, *supra*, F031053 at p. 20.) This court further held the section 12022, subdivision (b) enhancement must be stricken. (*People v. Gessel*, at p. 3.)

4.

Thereafter, the abstract of judgment was amended to reflect appellant was sentenced to 15 years to life, plus an aggregate consecutive determinate term of 12 years instead of 13 years.

On May 1, 2000, the California Supreme Court denied appellant's petition for review.

## SENATE BILL NOS. 1437 & 775

The instant appeal is from the denial of appellant's petition for resentencing that she filed pursuant to Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), that was effective on January 1, 2019, and amended " 'the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)[3]

"Substantively, Senate Bill 1437 accomplishes this by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723; *People v. Gentile* (2020) 10 Cal.5th 830, 842.)

"In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief. [Citation.]" (*Lewis, supra*, 11 Cal.5th at p. 959.)

---

[3] As amended, section 189, subdivision (f) states an exception that allows "individuals to be convicted of felony murder even if they did not act with malice and do not fall in one of the three categories of section 189, subdivision (e), where the victim is a peace officer engaged in the course of his or her duties and the defendant knows (or reasonably should know) these facts." (*People v. Hernandez* (2021) 60 Cal.App.5th 94, 99.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' [Citation.] If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' " (*Lewis, supra*, 11 Cal.5th at pp. 959–960.)

"Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. [Citation.] [¶] If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not ... previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.' " (*Lewis, supra*, 11 Cal.5th at p. 960.)

**Lewis**

In *Lewis*, the court interpreted the provisions of section 1170.95 and held that petitioners "are entitled to the appointment of counsel upon the filing of a facially

6.

sufficient petition [citation] and that only *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*Lewis, supra*, 11 Cal.5th at p. 957.) " 'If the petitioner has requested counsel, the court *shall* appoint counsel to represent the petitioner.' [Citation.]" (*Id.* at p. 963, italics added in original.)

*Lewis* also held that "at the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra,* 11 Cal.5th at p. 974.) When the court conducts the prima facie determination, section 1170.95, subdivision (b)(2) only permits screening out "noncomplying petitions, not petitions that lack substantive merit." (*Lewis,* at p. 968.)

*Lewis* further held that after appointing counsel, the trial court may rely on the record of conviction to determine whether the prima facie showing has been made in order "to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, 11 Cal.5th at pp. 970–971.) "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Lewis,* at p. 971.)

" 'However, if the record, *including the court's own documents*, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis, supra*, 11 Cal.5th at p. 971, italics added.)

"Appellate opinions … are generally considered to be part of the record of conviction.  [Citation.]  However, as we cautioned in [*People v. Woodell* (1998) 17 Cal.4th 448, 457], the probative value of an appellate opinion is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers.'  [Citation.]  In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in "factfinding involving the weighing of evidence or the exercise of discretion.'  [Citation.]  As the People emphasize, the 'prima facie bar was intentionally and correctly set very low.' "  (*Lewis, supra*, 11 Cal.5th at p. 972.)

"[T]here is no categorical bar to consulting the record of conviction at the prima facie stage."  (*Lewis, supra*, 11 Cal.5th at p. 972, fn. 6.)  "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1170.95,] subdivision (c)." (*Id.* at p. 972.)

The prima facie determination is a question of law, and the court may deny a petition at the prima facie stage if the petitioner is ineligible for resentencing as a matter of law.  (*Lewis, supra*, 11 Cal.5th at p. 966.)

*Lewis* announced a prejudicial error standard under *People v. Watson* (1956) 46 Cal.2d 818, if the court failed to appoint counsel or violated the petitioner's statutory rights under section 1170.95, and the petitioner must "therefore 'demonstrate there is a reasonable probability that in the absence of the error he [or she] … would have obtained a more favorable result.'  [Citations.]"  (*Lewis, supra*, 11 Cal.5th at pp. 957–958, 974.)

Therefore, to demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing.  (*Lewis, supra*, 11 Cal.5th at pp. 972–974; see *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

**Senate Bill No. 775**

In October 2021, Senate Bill No. 775 was enacted and amended section 1170.95, effective on January 1, 2022. (2020–2021 Reg. Sess.; Stats. 2021, ch. 551, § 1.) (Senate Bill 775.) As a result of the amendments, section 1170.95 clarified that "persons convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances. (§ 1170.95, subd. (a).)

The amendments also codified the holding in *Lewis* that "[u]pon receiving a petition in which the information required by this subdivision is set forth …, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (b)(3).) After the petition is filed, the People shall file a response and the petitioner may serve a reply. (*Id*. at subd. (c).)

After the parties have the opportunity to submit briefs, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1170.95, subd. (c).) If the petitioner makes the prima facie showing, "the court shall issue an order to show cause." (*Ibid*.) If the court declines to issue an order to show cause, "it shall provide a statement fully setting forth its reasons for doing so." (*Ibid*.)

If an order to show cause is issued, "the court shall hold a hearing to determine" whether to vacate the petitioner's conviction, recall the sentence, and resentence petitioner. (§ 1170.95, subd. (d)(1).) At the hearing, the prosecution has the burden to prove beyond a reasonable doubt that petitioner is guilty of murder or attempted murder under the amended versions of sections 188 and 189. (§ 1170.95, subd. (d)(3).)

"At the hearing to determine whether the petitioner is entitled to relief … [t]he admission of evidence in the hearing shall be governed by the Evidence Code, except that the court *may consider evidence previously admitted at any prior hearing or trial that is*

9.

*admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion.* However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3), as amended by Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022, italics added.)

## APPELLANT'S SECTION 1170.95 PETITION

On July 29, 2019, appellant filed, in pro. per., a section 1170.95 petition for resentencing. The petition was supported by appellant's declaration, signed under penalty of perjury, where she checked boxes on a preprinted form that stated she was entitled to resentencing under section 1170.95 because a complaint or information was filed against her that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; she pleaded guilty or no contest to first or second degree murder in lieu of going to trial because she believed she could have been convicted of first or second degree murder at trial pursuant to the felony-murder rule or the natural and probable consequences doctrine; she could not now be convicted of first or second degree murder because of the changes made to sections 188 and 189; and she requested appointment of counsel.

On August 2, 2019, the court appointed the public defender's office to represent appellant.

**The Prosecution's Opposition**

On February 6, 2020, the prosecution filed opposition and conceded appellant's petition stated a prima facie case for relief. However, the prosecution further argued the

10.

petition's allegations were false and misleading, because it was uncontested that appellant was the actual killer, who stabbed and killed her boyfriend, and stabbed and attempted to kill her father and two children, and she was not charged under the theories of felony murder or natural and probable consequences.[4]

**Appellant's Reply**

On May 29, 2020, appellant's public defender filed a reply, did not challenge the assertions in the opposition or rely on any contrary exhibits, and submitted the matter on the basis of appellant's petition.

**The Court's Denial of the Petition**

On August 4, 2020, the court issued an order that stated it had received and considered the petition, opposition, and reply, and it denied appellant's petition.

## DISCUSSION

On August 4, 2020, appellant filed a notice of appeal. As noted above, appellant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that appellant was advised she could file his own brief with this court. By letter on September 29, 2020, we invited appellant to submit additional briefing. To date, she has not done so.

We note that at the prima facie stage, the superior court complied with section 1170.95 by appointing counsel and allowing the parties to brief the issue. The court, however, did not conduct a hearing or issue a statement of reasons why it decided not to issue an order to show cause as required by section 1170.95. It is also not clear whether the court improperly denied the petition by engaging in premature factfinding based on the factual statement in the appellate opinion. (*Lewis, supra*, 11 Cal.5th at pp. 971–972; § 1170.95, subd. (c).)

---

[4] The prosecution filed a separate motion to dismiss the petition and asserted the amendments enacted by Senate Bill 1437 were unconstitutional. The court denied the motion to dismiss.

11.

To demonstrate prejudice from the denial of a section 1170.95 petition before the issuance of an order to show cause, the petitioner must show it is reasonably probable that, absent error, his or her petition would not have been summarily denied without an evidentiary hearing. (*Lewis, supra*, 11 Cal.5th at pp. 972–974; *People v. Watson, supra,* 46 Cal.2d at p. 836.) The prima facie determination is a question of law, and the court may deny a petition at the prima facie stage if the petitioner is ineligible for resentencing as a matter of law. (*Lewis,* at p. 966.) Pursuant to section 1170.95, a petitioner is ineligible for resentencing if he or she was the actual killer. (§§ 188, subd. (a)(3), 189, subd. (e), 1170.95, subd. (a)(3); see *People v. Gentile*, *supra*, 10 Cal.5th at p. 842.) Appellant was not prejudiced by the court's summary denial of her petition. The procedural history of this case, as contained in the instant appellate record, establish as a matter of law that appellant was the actual killer, based on upon her pleas that she was guilty of committing the murder, but she was not guilty of the offense by reason of insanity, and the court's finding that she was sane when she committed the murder.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## **DISPOSITION**

The judgment is affirmed.

12.